## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| **Lloyd V. Murphey,** | ) | |
| | ) | **JURY TRIAL DEMANDED FOR** |
| and | ) | **ALL CLAIMS TRIABLE BY JURY** |
| | ) | |
| | ) | |
| **Mary Ellen Murphey** | ) | |
| | ) | |
| **Plaintiffs**, | ) | |
| | ) | |
| | ) | |
| **vs.** | ) | **Case No.** |
| | ) | |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | **Federal Tort Claim Act** |
| and | ) | **and** |
| | ) | **Personal Injury – Medical** |
| | ) | **Malpractice** |
| **Robert J. Backer, M.D.,** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| | ) | |
| **West County Neurological Surgery, Inc.,** | ) | |
| **a Missouri Corporation,** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| | ) | |
| **West County Radiological Group, Inc.,** | ) | |
| **a Missouri Corporation,** | ) | |
| **d/b/a West County Radiology** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| | ) | |
| **St. John's Mercy Health System,** | ) | |
| **a Missouri Corporation,** | ) | |
| **d/b/a St. John's Mercy Medical Center** | ) | |
| | ) | |
| **Defendants.** | ) | |

**COMPLAINT**

COMES NOW Lloyd V. Murphey, by and through his attorneys, and for his cause against United States of America states as follows:

**JURISDICATION AND VENUE**

1.       This action is brought against the United States of America under the Federal Tort Claims Act, 28 USC §§ 1346(b), 2671 *et seq*.

2.       United States of America, by and through its agency, the Department of Veteran Affairs denied Plaintiffs' administrative claims and on November 3, 2011 mailed its notice of Denial, a copy of which is attached hereto as Exhibit "A".  A copy of Lloyd Murphey's Federal Tort Claim is attached hereto as Exhibit "B" and a copy of  Mary Ellen Murphey's Federal Tort Claim is attached hereto as Exhibit "C".  Plaintiffs hereby incorporate herein Exhibit "A", Exhibit "B" and Exhibit "C" as if here set forth in full.

3.       Jurisdiction in these causes is properly vested in the United States District Courts in that Lloyd Murphey and Mary Ellen Murphey have exhausted their administrative remedies as required by 28 USC § 2675.

4.       Lloyd Murphey and his wife Mary Ellen Murphey reside in Warren County, Missouri, which is located within the boundaries of the United States District Court for the Eastern District of Missouri, Eastern Division.

5.       Venue is properly vested in this Court pursuant to 28 USC § 1402 (b) in that the actions herein alleged constitute civil actions on tort claims against the United

1

States of America under subsection (b) of section 1346 and these actions are brought in the United States District Court in the district and division in which Plaintiffs reside.

## BACKGROUND INFORMATION

6.      On or about December 22, 2007, Lloyd Murphy presented to his primary care health provider with a history of low to mid back pain.  His health provider ordered a Magnetic Resonance Image of Thoracic Spine (hereinafter "Thoracic MRI") and a Magnetic Resonance Image of the Lumbar Spine (hereinafter "Lumbar MRI").

7.      On or about January 7, 2008, Lloyd Murphey presented to St. John's Mercy Medical Center in St. Louis County, Missouri, for the purpose of obtaining the Thoracic MRI and Lumbar MRI.  These MRIs were performed and read in St. Louis County, Missouri by West County Radiological, a Missouri Corporation d/b/a West County Radiology acting through its servants, agents and employees including, but not limited to, Christine R. Osmon, M.D. and David Niebruegge, M.D.

8.      On or about January 7, 2008, Dr. Osmon read the Thoracic MRI and noted "[i]ntradural extramedullary flow-voids appear somewhat prominent and tortuous.  This can be seen as a normal variant or with spinal dural AV fistulas."  Dr. Osmon stated her impression  as "cervical stenosis.  No thoracic spine metastatic disease or abnormal enhancement.  Intradural extramedullary flow-voids are upper limits of normal."  Dr. Niebruegge reviewed both the Thoracic and Lumbar MRI's.  The findings of West County Radiological Group, Inc. did not include any reference to spinal dural AV fistulas.

2

9.     A spinal dural AV fistula (hereinafter "DAVF") is a type of arteriovenous malformation (hereinafter "AVM").

10.     Shortly thereafter, Lloyd Murphey's private health care provider referred him to a neurosurgeon, Robert Backer, M.D.

11.     On or about January 10, 2008, Lloyd Murphey presented to Dr. Backer and West County Neurological in St. Louis County, Missouri at which time he examined Lloyd Murphey, read the MRI's and ordered a myelogram of only the lumbar spine.

12.     On or about January 22, 2008, Lloyd Murphey again presented to St. John's Mercy Medical Center for the purpose of obtaining the lumbar myelogram.  The lumbar myelogram was performed and read by West County Radiological Group acting through its servants, agents and employees.

13.     Following the January 22, 2008 lumber myelogram, Dr. Backer advised Lloyd Murphey that he had no medical condition which required surgery.

14.     On about August 1, 2008, Lloyd Murphey was found to have a DAVF in the mid to lower portion of his thoracic spine.  This DAVF, or indication of it, was present on both the January 7, 2008 and the January 22, 2008 images obtained at St. John's Medical Center by West County Radiological Group.

15.     The imaging and imaging services performed at St. John's on January 7, 2008, and the imaging and imaging services performed at St. John's on January 22, 2008 depicted indicators of the presence of a DAVF located in proximity to Lloyd Murphey's spine, from which a reasonably careful and prudent radiologist/neuroradiologist would have undertaken additional procedures to diagnose the presence or absence of the DAVF and/or advise the patient and his medical providers of the condition in order that

3

additional procedures would have been undertaken to diagnose the presence or absence of the DAVF.

16.     The imaging and imaging services performed at St. John's on January 7, 2008, and the imaging and imaging services performed at St. John's on January 22, 2008, and the examinations and consultations conducted in January 2008 by Robert J. Backer, M.D., and West County Neurological Surgery, Inc., depicted indicators of the presence of a DAVF located in proximity to Lloyd Murphey's spine, from which a reasonably careful and prudent neurosurgeon would have pursued additional procedures to diagnose the presence or absence of the DAVF and to properly inform the patient of his condition and commense treatment.

## Count I

## Federal Tort Claims Act

17.     Plaintiff Lloyd Murphey incorporates herein paragraphs 1 through 16.

18.     At all times herein pertinent United States of America operated a medical facility and treatment center in Columbia, Missouri known as the Harry S. Truman Memorial Hospital and/or the Veterans' Administration Medical Center (hereinafter referred to as the "Medical Center").

19.     Lloyd Murphey is a veteran of the United States Army who suffered permanent service related injury and disability as a result of his military service in the 1960s.

20.     Beginning in 2007 Lloyd Murphey experienced episodes of back pain, weakness and collapse of his lower extremities.

21.     During the period March 2008 through and including July 31, 2008 United States of America, through its servants, agents, and employees, undertook to provide treatments, examinations and medical care to Lloyd Murphey at the Medical Center and at the University of Missouri Medical Center in Columbia, Missouri for various conditions including complaints, conditions and functions concerning his back, legs and lower extremities.

22.     From prior to January 2008, and at all time during the period United States of America undertook to provide Lloyd Murphey with medical treatments, examinations and care for his back, legs and lower extremities, until on or about July 31, 2008, Lloyd Murphey suffered from a medical condition known as spinal dural arteriovenous fistula (DAVF).

23.     Until on or about July 31, 2008, Lloyd Murphey was unaware that he suffered from DAVF.

24.     Spinal DAVF is a medical condition whereby the normal blood flow between arteries and veins is interrupted, changed and distorted, and which can result in death, paralysis and permanent injuries; the proper medical treatment requiring immediate surgery.

25.     In the period from January 2008 through July 31, 2008, as the result of the DAVF not being treated or corrected, the conditions of Lloyd Murphey's back and lower extremities continued to deteriorate and worsen; his pain became progressively worse and more intense and severe; he became weak and progressively weaker; he developed loss of control of his bodily functions, including his bowels and bladder, which progressively worsened and increased; he developed numbness of both extremities below the

5

umbilicus; and he developed paralysis of his lower extremities and body below the umbulicies.

26.     At all times mentioned herein, John Zimmerschied M.D. (hereinafter "Dr. Zimmerschied") is and was a physician engaged in the practice of his profession as an employee of the United States of America.

27.     At all times mentioned herein, Brenda Woods, D.O. (hereinafter "Dr. Woods") is and was a physician engaged in the practice of her profession as an employee of the United States of America.

28.     From March 2008 through and including July 31, 2008, Dr. Zimmerschied and Dr. Woods, acting alone and together and with other agents, servants and employees of, the names of which are known to the United States of America, acting within the scope of their employment and/or agency, performed services, treatments, and administrations to Lloyd Murphey.

29.     During the period March 2008 through July 31, 2008 the services, treatments, examinations, and health care provided to Lloyd Murphey for complaints, conditions and functions concerning his back, legs and lower extremities by Dr. Zimmerschied, Dr. Woods and others working together with them, were ones that were provided to Lloyd Murphey as part of the medical care being provided to him by the United States of America through the United States Veterans' Administration and its employees, agents, servants and providers.

30.     On or about July 30 and 31, 2008, as part of the medical care, treatment and administrations being provided by the United States of America, imaging services

6

were performed on Lloyd Murphey in which the spinal DAVF was identified and diagnosed.

31.     On or about July 31, 2008 Lloyd Murphey was airlifted from the Medical Center to Barnes Hospital in St. Louis, Missouri where immediate surgery was performed upon him to properly treat the DAVF.

32.     Following surgery to treat the DAVF Lloyd Murphey underwent months of inpatient and outpatient rehabilitation, treatments and administrations resulting in limited recovery of function in his lower extremities and lower bodily functions.

33.     During the course of treatments by the United States of America provided to Lloyd Murphey, at least as early as July 14, 2008, copies of the results and/or films of imaging performed at St. John's Mercy Medical Center on or about January 7 and January 22, 2008 were furnished to Dr. Zimmerschied, Dr. Woods and others working together with them.

34.     Robert J. Backer, M.D., West County Neurological Surgery, Inc., West County Radiological Group, Inc., and St. John's Mercy Medical Center, were aware that Lloyd Murphey was being treated by the United States of America for complaints, conditions and functions concerning his back, legs and lower extremities; that the results of their imaging and services were being furnished to the United States of America; and that the results of the imaging performed and imaging service at St. John's were being used by the United States of America in providing Lloyd Murphey with treatments, and administrations for his back, legs and lower extremities.

35.     In administering, performing, interpreting and evaluating, and providing medical  services to Lloyd Murphey, the employees, servants and agents of the United

States of America, including Dr. Zimmerschied, Dr. Woods, and others, were negligent and failed to use such care as a reasonably prudent and careful health care provider would have under similar circumstances, including but not limited to, the following specific acts or omissions:

      a.      failure to diagnose the DAVF, although the DAVF was capable of being diagnosed;

      b.      diagnosing Lloyd V. Murphey's condition as not having the DAVF when Lloyd Murphey had the DAVF and it was capable of being diagnosed;

      c.      failure to interpret or to have interpreted the January images depicted to detect the presence and extent of indicators of the DAVF;

      d.      interpreting the images depicted as not indicating the presence of the DAVF;

      e.      failure to recommend performing additional medical procedures to confirm or eliminate the presence of the DAVF;

      f.      failure to undertake additional medical procedures to confirm or eliminate the presence of the DAVF;

      g.      failure to refer Lloyd Murphey to an appropriate specialist for interpretation of the images;

      h.      delaying Lloyd Murphey from obtaining medical treatment and diagnosis;

      i.      failing to timely undertake proper treatment of the DAVF; and

        j.      failing to timely inform Lloyd Murphey of the presence of the DAVF.

35.    As a direct and proximate result of the negligence of the United States of America, acting by and through its employees, agents and servants, Lloyd Murphey was injured and suffered damage in that he has suffered severe impairment and  loss of function of his body, back, trunk, arms and legs together with all nerves, muscles, vessels, skin, tissues and parts thereof;  he was required to endure additional pain and painful treatment and procedures;  he has suffered paralysis and neuropathy; his ability to work, sleep, lift and enjoy life has been diminished and made painful; his ability to walk and stand has been impaired and made painful; his bowel, bladder and sexual functions have been damaged and impaired; he has been required to obtain medical treatments and procedures and he will be required to seek additional treatments and procedures;  and he has incurred and will incur in the future substantial medical, hospital, surgical, nursing, therapeutic, transportation and living accommodation expenses, the amount of which is not presently known; he has lost income and in the future will lose additional income, the amount of which is not presently known; that all of the aforesaid damages have resulted in pecuniary loss to him as well as pain, suffering, mental anguish, inconvenience, physical impairment, disfigurement, loss of capacity to enjoy life, and loss of consortium, which damages are permanent and progressive.

WHEREFORE, Lloyd Murphey prays for Judgment against the United States of America in an amount that is fair and reasonable, in excess of $25,000, but not greater than the amount claimed in his administrative claim for damages, for his costs and

expenses incurred herein, and for such other and further relief as this Court deems just and proper.

## Count II

## Federal Torts Claim Act

COMES NOW  Mary Ellen Murphey, by and through her undersigned counsel, and for her cause of action against the United States of America, states as follows:

36.     At all times herein pertinent, Mary Ellen Murphey was the lawfully wedded wife of Lloyd V. Murphy, living and cohabiting with him.

37.     Mary Ellen Murphey realleges and restates herein the allegations contained in paragraphs 1-35.

38.   As a result of the injuries to Lloyd Murphey, Mary Ellen Murphey has been caused to suffer the loss of the society, consortium, companionship, love, affection, and support of her husband; she has been, and will in the future will be, required to provide care and support activities and attention to accommodate the special medical conditions and disabilities of her husband to allow him to obtain medical treatments and care as well as to provide and accommodate the special needs he requires for day to day living, the exact amount of which is presently unknown.WHEREFORE, plaintiff Mary Ellen Murphey prays for Judgment against United States of America in an amount that is fair and reasonable, in excess of $25,000, but not greater than the amount claimed in her administrative claim for damages, for her costs and expenses incurred herein, and for such other and further relief as this Court deems just and proper.

## Count III

## Medical Malpractice
## West County Radiological Group, Inc., and St. John's Mercy Health System

COMES NOW Lloyd Murphey, by and through his attorneys, and for his cause against West County Radiological Group, Inc., and his cause against St. John's Mercy Health System, a Missouri Corporation, states as follows:

### Jurisdiction

This is an action for medical malpractice, and the Court has, and should assume, supplemental jurisdiction of this action pursuant to 28 USC §1367 for the following reasons:

39.     The action for medical malpractice against the United States of America which is alleged in Count I of the complaint arises under the 28 USC § 2675, and jurisdiction of the action is conferred on this Court by 28 USC § 1346 (b)(1) in that it is an action for money damages for personal injury against the United States of America for a negligent or wrongful act or omission by an employee of the United States while acting within the scope of office or employment.

40.     The action for medical malpractice against West County Radiological Group, Inc., and the action against St. John's Mercy Health System, a Missouri Corporation which are alleged in Count III of this complaint, are based on the same operative facts alleged in Count I, as more clearly appears below.

11

41.     Judicial economy, convenience, and fairness to the parties to this action will result if the Court assumes and exercises supplemental jurisdiction of the actions for the medical malpractice claims which is alleged in Count III of the complaint.

## PARTIES

42.     At all times mentioned herein, Robert J. Backer, M.D. (hereinafter "Dr. Backer") is and was a citizen of the State of Missouri, and a physician and surgeon engaged in the practice of his profession in St. Louis County, and was providing medical services to Lloyd Murphey individually and by and through his agents, servants and employees acting within the course and scope of their employment and/or agency.

43.     At all times mentioned herein West County Neurological Surgery, Inc., (hereinafter "West County Neurological Surgery") is and was a Missouri corporation existing and operating through its agents, servants and employees acting within the course and scope of their employment and/or agency, which provides medical services to individuals in the St. Louis metropolitan area, including to Lloyd Murphey.

44.     At all times mentioned herein Dr. Backer was a member, agent, employee and/or officer of West County Neurological Surgery, and all of Dr. Backer's actions mentioned herein were at all times within the scope and course of his agency and/or employment with West County Neurological Surgery.

45.     At all times mentioned herein West County Radiological Group, Inc. d/b/a West County Radiology (hereinafter "West County Radiological Group") is and was a Missouri corporation existing and operating through its agents, servants and employees acting within the course and scope of their employment and/or agency, which provides

medical services to individuals in the St. Louis metropolitan area, including to Lloyd Murphey.

46.     Christine R. Osmon, M.D. (hereinafter "Dr. Osmon") is and was a physician engaged in the practice of her profession in St. Louis County, and in January 2008 was providing medical services to Lloyd Murphey individually and by and through her agents, servants and employees acting within the course and scope of their employment and/or agency.

47.     At all times mentioned herein when Dr. Osmon rendered medical services to Lloyd Murphey, Dr. Osmon was a member, agent, employee and/or officer of West County Radiological Group, and all of Dr. Osmon's actions mentioned herein were at all times within the scope and course of her agency and/or employment with West County Radiological Group.

48.     David Niebruegge, M.D. (hereinafter "Dr. Niebruegge") is and was a physician engaged in the practice of his profession in St. Louis County, and in January 2008 was providing medical services to Lloyd Murphey individually and by and through his agents, servants and employees acting within the course and scope of their employment and/or agency.

49.     At all times mentioned herein when Dr. Niebruegge rendered medical services to Lloyd Murphey, Dr. Niebruegge was a member, agent, employee and/or officer of West County Radiological Group, and all of Dr. Niebruegge's actions mentioned herein were at all times within the scope and course of his agency and/or employment with West County Radiological Group.

50.     At all times mentioned herein St. John's Mercy Health System, d/b/a St. John's Mercy Medical Center (hereinafter "St. John's") is and was a Missouri corporation existing and operating through its agents, servants and employees acting within the course and scope of their employment and/or agency, which provides medical services in the St. Louis metropolitan area, including to Lloyd Murphey.

51.     At all times mentioned herein West County Radiological Group was the agent, servant and/or employee acting within the course and scope of its agency and/or employment with St. John's.

52.     At all times mentioned herein when Dr. Osmon rendered medical care to Lloyd Murphey. Dr. Osmon was the agent, servant and/or employee acting within the course and scope of her agency and/or employment with St. John's.

53.     At all times mentioned herein when Dr. Niebruegge rendered medical care to Lloyd Murphey. Dr. Niebruegge was the agent, servant and/or employee acting within the course and scope of his agency and/or employment with St. John's.

54.     The acts of negligence here complained of against Dr. Backer, West County Neurological Surgery, Dr. Osmon, Dr. Niebruegge, West County Radiological Group and St. John's occurred in St. Louis County, Missouri.

55.     At all times herein pertinent West County Radiological Group, Dr. Osmon, and Dr. Niebruegge held themselves out to the public as specialists in the medical specialty of radiology/neuroradiology and were actively practicing medicine in the field of radiology/neuroragiology.

56.     At all times herein pertinent St. John's held itself out to the general public as providing various types of medical care including providing medical imaging services.

14

57.     Beginning in 2007 Lloyd Murphey had experienced episodes of back pain, weakness and collapse of his lower extremities.

58.     In and prior to January 2008, Lloyd Murphey suffered from a medical condition known as spinal dural arteriovenous fistula (AVF).

59.     In the period from January 2008 through July 2008, as the result of the AVF not being treated or corrected, the condition of  Lloyd Murphey's back and lower extremities continued to deteriorate and worsen to the point of lower extremity paralysis and numbness on both extremities below the umbilicus.

60.     On or about July 30-31, 2008 imaging was performed on Lloyd Murphey and the spinal dural AVF was identified and treated within hours of being diagnosed.

61.     On or about January 7, 2008 and again on January 22, 2008 Lloyd Murphey presented himself at St. John's for testing and evaluation at the imaging services facilities maintained and operated by St. John's.

62.     On or about January 7, 2008 an MRI was performed on Lloyd Murphey at the St. John's imaging services facilities.

63.     On or about January 22, 2008 a CT scan and a myelogram were performed on Lloyd Murphey at the St. John's imaging services facilities.

64.     The MRI, the CT scan and myelogram administered to Lloyd Murphey were conducted and performed by St. John's and West County Radiological Group acting through their agents and employees.

65.     The images and results of the MRI, the CT scan and myelogram performed on Lloyd Murphey were interpreted and evaluated by St. John's and West County Radiological Group acting through their agents and employees.

15

66.    In administrating, conducting, performing, interpreting and evaluating imaging services provided to Lloyd Murphey, West County Radiological Group and St. John's, and each of them, through their carelessness and negligence during and subsequent to the January, 2008 procedures, failed to use such care as a reasonably prudent and careful health care provider would have under similar circumstances, including but not limited to, the following specific acts or omissions:

a.    failure to diagnose the AVF, although the AVF was capable of being diagnosed;

b.    diagnosing Lloyd Murphey's condition as not having the AVF when Lloyd Murphey had the AVF and it was capable of being diagnosed;

c.    failure to interpret the images obtained to detect the presence and extent of indicators of the AVF;

d.    interpreting the images obtained as not indicating the presence of the AVF;

e.    failure to recommend performing additional medical procedures to confirm or eliminate the presence of the AVF;

f.    failure to undertake additional medical procedures to confirm or eliminate the presence of the AVF;

g.    failure to refer Lloyd Murphey to an appropriate specialist for interpretation of the MRI images;

h.    delaying Lloyd Murphey from obtaining medical treatment and diagnosis; and

16

       i.      failing to perform Lloyd Murphey of the presence of the AVF.

67.    As a direct and proximate result of the negligence of West County Radiological Group and  St. John's, and each of them, Lloyd Murphey was injured and suffered damage in that he has suffered severe impairment and  loss of function of his body, back, trunk, arms and legs together with all nerves, muscles, vessels, skin, tissues and parts thereof;  he was required to endure additional pain and painful treatment and procedures;  he has suffered paralysis and neuropathy; his ability to work, sleep, lift and enjoy life has been diminished and made painful; his ability to walk and stand has been impaired and made painful; his bowel, bladder and sexual functions have been damaged and impaired; he has been required to obtain medical treatments and procedures and he will be required to seek additional treatments and procedures;  and he has incurred and will incur in the future substantial medical, hospital, surgical, nursing, therapeutic, transportation and living accommodation expenses, the amount of which is not presently known; he has lost income and in the future will lose additional income, the amount of which is not presently known; that all of the aforesaid damages have resulted in pecuniary loss to him as well as pain, suffering, mental anguish, inconvenience, physical impairment, disfigurement, loss of capacity to enjoy life, and loss of consortium, which damages are permanent and progressive, and for which he seeks damages in an amount that is fair and reasonable, in excess of Twenty-Five Thousand Dollars ($25,000.00).


WHEREFORE, Lloyd Murphey prays for Judgment against West County Radiological Group, Inc., and St. John's Mercy Health System, a Missouri Corporation,

in an amount that is fair and reasonable, in excess of $25,000, for his costs and expenses incurred herein, and for such other and further relief as this Court deems just and proper.

**Count IV**

**Medical Malpractice – Loss of Consortium**
**West County Radiological Group, Inc., and St. John's Mercy Health System**

**COMES NOW** Mary Ellen Murphey, by and through her undersigned counsel, and for her cause against West County Radiological Group, Inc., and St. John's Mercy Health System, a Missouri corporation, states as follows:

**Jurisdiction**

This is an action for loss of consortium resulting from the allegations set forth in Count III for medical malpractice, and the Court has, and should assume, supplemental jurisdiction of this action pursuant to 28 U.S.C.A. §1367 for the following reasons:

68.    The action for medical malpractice against United States of America which is alleged in Count I and the claim for loss of consortium which is alleged in Count II of the complaint arise under the 28 USC § 2675, and jurisdiction of each action is conferred on this Court by 28 USC § 1346 (b)(1) in that each is an action for money damages for personal injury against the United States of America for a negligent or wrongful act or omission by an employee of the United States while acting within the scope of his office or employment.

69.    The action for loss of consortium caused by medical malpractice against West County Radiological Group, Inc., and St. John's Mercy Health System, a Missouri

18

Corporation which is alleged in Count III of this complaint, is based on the same operative facts alleged in Count I and Count II, as more clearly appears below.

70.     Judicial economy, convenience, and fairness to the parties to this action will result if the Court assumes and exercises supplemental jurisdiction of the action for the medical malpractice claim which is alleged in Count III of the complaint and the claims for loss of consortium alleged in Count IV of the Complaint.

71.     At all times herein pertinent, Mary Ellen Murphey was the lawfully wedded wife of Lloyd Murphy, living and cohabiting with him.

72.     Mary Ellen Murphey realleges and restates herein the allegations contained in paragraphs 42 through 67 inclusive.

73.     As a result of the injuries to Lloyd Murphey, Mary Ellen Murphey has been caused to suffer the loss of the society, consortium, companionship, love, affection, and support of her husband; she has incurred, and will in the future incur, expenses for performing work and services he previously provided for her; she has been, and will in the future will be, required to provide care and support activities and attention to accommodate the special medical conditions and disabilities of her husband to allow him to obtain medical treatments and care as well as to provide and accommodate the special needs he requires for day to day living, the exact amount of which is presently unknown.

WHEREFORE, Mary Ellen Murphey prays for Judgment against defendants West County Radiological Group, Inc., and St. John's Mercy Health System, a Missouri Corporation, in an amount that is fair and reasonable, in excess of $25,000, for her costs and expenses incurred herein, and for such other and further relief as this Court deems just and proper.

## Count V

### Medical Malpractice
### Robert J. Backer, M.D. and West County Neurological Surgery, Inc.

COMES NOW Lloyd Murphey, by and through his attorneys, and for his cause against Robert J. Backer, M.D. and West County Neurological Surgery, Inc., states as follows:

### Jurisdiction

This is an action for medical malpractice, and the Court has, and should assume, supplemental jurisdiction of this action pursuant to 28 USCA §1367 for the following reasons:

74.    The action for medical malpractice against the United States of America which is alleged in Count I of the complaint arises under the 28 USC § 2675, and jurisdiction of the action is conferred on this Court by 28 USC § 1346 (b)(1) in that it is an action for money damages for personal injury against the United States of America for a negligent or wrongful act or omission by an employee of the United States while acting within the scope of his office or employment.

75.    The action for medical malpractice against Robert J. Backer, M.D. and West County Neurological Surgery, Inc. which is alleged in Count V of this complaint, are based on the same operative facts alleged in Count I, as more clearly appears below.

76.    Judicial economy, convenience, and fairness to the parties to this action will result if the Court assumes and exercises supplemental jurisdiction of the action for the medical malpractice claim which is alleged in Count V of the complaint.

77.     Lloyd Murphey realleges and restates herein his allegations contained in paragraphs 42-67 above.

78.     At all times herein pertinent Dr. Backer and West County Neurological Surgery held themselves out to the public as being engaged in the medical specialty of neurosurgery.

79.     In January 2008 Lloyd Murphey presented himself to Dr. Backer and West County Neurological Surgery for examination, testing, evaluation, diagnosis and treatment for pain and paralysis involving his back and lower extremities.

80.     In January 2008 Lloyd Murphey was treated, examined, tested, evaluated and administered to by Dr. Backer for the medical condition of his back and lower extremities.

81.     In treating, examining, testing, evaluating and administrating to Lloyd Murphey, Dr. Backer acted as an agent and employee of  West County Neurological Surgery, Dr. Backer at all times acting within the scope of his employment and agency.

82.     In treating, examining, testing, evaluating and administrating to Lloyd Murphey for the medical condition of his back and lower extremities, Dr. Backer and West County Neurological Surgery, and each of them, through their carelessness and negligence during and subsequent to the January, 2008 procedures, failed to use such care as a reasonably prudent and careful health care provider would have under similar circumstances, including but not limited to, the following specific acts or omissions:

a.     failure to diagnose the AVF, although the AVF was capable of being diagnosed;

b.     diagnosing Lloyd Murphey's condition as not having the AVF when he had the AVF and it was capable of being diagnosed;

c.     failure to interpret the images obtained to detect the presence and extent of indicators of the AVF;

d.     interpreting the images obtained as not indicating the presence of the AVF;

e.     failure to recommend performing additional medical procedures to confirm or eliminate the presence of the AVF;

f.     failure to undertake additional medical procedures and diagnostic processes to confirm or eliminate the presence of the AVF;

g.     failure to refer Lloyd Murphey to an appropriate specialist for interpretation of the MRI images;

h.     failure to treat or refer Lloyd Murphey to an appropriate specialist for treatment of the AVF;

i.     informing Lloyd Murphey that he had no medical condition causing the pain and loss of function in his back and lower extremities which required or should be treated by a surgical intervention; and

j.     delaying Lloyd Murphey from obtaining necessary medical treatments;

k.     failing to inform Lloyd Murphey of the presence of the AVF.

83.     As a direct and proximate result of the negligence of Backer and West County Neurological Surgery, Lloyd Murphey was injured and suffered damage in that

he has suffered severe impairment and  loss of function of his body, back, trunk, arms and legs together with all nerves, muscles, vessels, skin, tissues and parts thereof;  he was required to endure additional pain and painful treatment and procedures;  he has suffered paralysis and neuropathy; his ability to work, sleep, lift and enjoy life has been diminished and made painful; his ability to walk and stand has been impaired and made painful; his bowel, bladder and sexual functions have been damaged and impaired; he has been required to obtain medical treatments and procedures and he will be required to seek additional treatments and procedures;  and he has incurred and will incur in the future substantial medical, hospital, surgical, nursing, therapeutic, transportation and living accommodation expenses, the amount of which is not presently known; he has lost income and in the future will lose additional income, the amount of which is not presently known; that all of the aforesaid damages have resulted in pecuniary loss to him as well as pain, suffering, mental anguish, inconvenience, physical impairment, disfigurement, loss of capacity to enjoy life, and loss of consortium, which damages are permanent and progressive, and for which he seeks damages in an amount that is fair and reasonable, in excess of Twenty-Five Thousand Dollars ($25,000.00).

WHEREFORE, Lloyd Murphey prays for Judgment against Dr. Backer and West County Neurological Surgery in an amount that is fair and reasonable, in excess of $25,000, for his costs and expenses incurred herein, and for such other and further relief as this Court deems just and proper.

## Count VI

### Medical Malpractice – Loss of Consortium
### Robert J. Backer, M.D. and West County Neurological Surgery, Inc.

COMES NOW Mary Ellen Murphey, by and through her attorneys, and for her cause against Robert J. Backer, M.D. and West County Neurological Surgery, Inc., states as follows:

### Jurisdiction

This is an action for loss of consortium resulting from the allegations set forth in Count V for medical malpractice, and the Court has, and should assume, supplemental jurisdiction of this action pursuant to 28 U.S.C.A. §1367 for the following reasons:

84.    The action for medical malpractice against United States of America which is alleged in Count I, and the claim for loss of consortium which is alleged in Count II of the complaint, arise under the 28 USC § 2675, and jurisdiction of each action is conferred on this Court by 28 USC § 1346 (b)(1) in that each is an action for money damages for personal injury against the United States of America for a negligent or wrongful act or omission by an employee of the United States while acting within the scope of office or employment.

85.    The action for loss of consortium caused by medical malpractice against Robert J. Backer, M.D. and West County Neurological Surgery, Inc., which is alleged in Count VI of this complaint, is based on the same operative facts alleged in Count I and Count II, as more clearly appears below.

86.    Judicial economy, convenience, and fairness to the parties to this action will result if the Court assumes and exercises supplemental jurisdiction of the action for the loss of consortium resulting from the medical malpractice claim which is alleged in Count V of the complaint, and the claims for loss of consortium alleged in Count II and Count IV of the complaint.

87.    At all times herein pertinent, Mary Ellen Murphey was the lawfully wedded wife of Lloyd Murphy, living and cohabiting with him.

88.    Mary Ellen Murphey realleges and restates herein the allegations contained in paragraphs 77 through 83 inclusive.

89.    As a result of the injuries to Lloyd Murphey, Mary Ellen Murphey has been caused to suffer the loss of the society, consortium, companionship, love, affection, and support of her husband; she has incurred, and will in the future incur, expenses for performing work and services he previously provided for her; she has been, and will in the future will be, required to provide care and support activities and attention to accommodate the special medical conditions and disabilities of her husband to allow him to obtain medical treatments and care as well as to provide and accommodate the special needs he requires for day to day living, the exact amount of which is presently unknown.

WHEREFORE, Mary Ellen Murphey prays for Judgment against Backer and West County Neurological Surgery in an amount that is fair and reasonable, in excess of $25,000, for her costs and expenses incurred herein, and for such other and further relief as this Court deems just and proper.

WITZEL  KANZLER DIMMITT
KENNEY & KANZLER, LLC


By:    /s/ Richard C. Witzel
       Richard C. Witzel #22690
       David A. Dimmitt # 39555
       2001 S. Big Bend Blvd.
       St. Louis, MO  63117
       (314) 645-5367
       (314) 645-5387 (Fax)
       rwitzel@wkllc.com
       Attorneys for Plaintiff